# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH L. WEBB, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. CIV-10-399-R |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423. This matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED for further administrative proceedings**.

## PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on May 20, 2003 which was denied on initial consideration and on reconsideration at the administrative level (TR. 19). Following a hearing *de novo*, an administrative law judge (ALJ) on January 13, 2006 issued her decision finding that Plaintiff was not entitled to DIB (TR. 19-30). On May 11, 2007 the District Court remanded the case back to the Commissioner for further proceedings as described in the report and recommendation of the Magistrate Judge (TR. 455-456, 471, 457-470). Pursuant to the District Court's Order and Judgment a supplemental hearing was held on January 6, 2009 (TR. 615-646). The Plaintiff appeared in person and with her attorney and offered her testimony in support of the

application (TR. 626-640). The ALJ issued her decision on September 15, 2009 finding that Plaintiff was not entitled to DIB (TR. 454). The Appeals Council denied the Plaintiff's request for review on February 18, 2010, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 435-437).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted*).

## DISCUSSION & FINDINGS

In addressing the Plaintiff's disability application the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity during the relevant period of March 1, 2002 through her last insured date of December 31, 2007, so the process continued (TR. 447). At step two, the ALJ concluded that Plaintiff had the following severe impairments: A right hip and thigh condition, depression, and narcotic dependence (TR. 447). At step three, the ALJ found that the Plaintiff did

not have an impairment or combination of impairments which meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 448). At step four, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform her past relevant work (PRW) as a "secretary, abeit in reduced numbers" (TR. 452). Despite her finding at step four, the ALJ continued to step five.

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ made an alternative finding that Plaintiff retained the RFC to perform a limited range of sedentary work (TR. 448). The ALJ considered the testimony of the VE and determined there were jobs existing in significant numbers in the national economy which Plaintiff could perform (TR. 453). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB (TR. 454).

On appeal to this Court, Plaintiff alleges that the ALJ (I) erred in relying on incompetent vocational testimony to support her finding that Plaintiff was not disabled; (II) erred in her evaluation of the medical evidence; and (III) erred in her credibility determination.

## I.

Plaintiff's argues that the testimony of the VE conflicts with the *Dictionary of Occupational Titles* (4th ed. 1991)( DOT) as to Plaintiff's PRW as a secretary and as to the job of civil service clerk identified by the VE at step five (See Plaintiff's Brief at pages 3-6). Before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the requirements of identified jobs corresponds with the DOT, and elicit a reasonable explanation for any discrepancy on this point.

*Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999). An ALJ is required to use information provided by the DOT to assess occupational skill requirements, but it is evident that the DOT's "information about skills must be massaged, if you will, into the agency's classifications." 20 C.F.R. 404.1568; *Haddock* at 1089. Here, as in *Haddock*, the ALJ did not ask the VE to explain her thought process, but settled for a summary conclusion (TR. 642). As in *Haddock* the ALJ did not elicit enough evidence with regard to skills for the Court to assess whether there is a conflict between the DOT and the VE's testimony on the DOT job component, "Worker Functions" labeled "People", which expresses the degree of interaction with other people that the jobs require (See Plaintiff's Brief at page 4). Thus, there exists an apparent conflict between the VE's testimony and the DOT with regard to the jobs of secretary and civil service clerk which remains unexplained by the VE and therefore defies judicial review.

Plaintiff also argues that the ALJ erred by failing to identify Plaintiff's transferable skills that allowed her to do the jobs of civil service clerk and sorter (See Plaintiff's Brief at page 6). In particular the Plaintiff asserts that the VE failed to enumerate the specific skills that were transferable (TR. 642-643). When an ALJ makes a finding that a claimant has transferable skills, she must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable. *Haddock* at 1084; *Dikeman v. Halter*, 245 F.3d 1182, 1184-1185 (10th Cir. 2001). Here, the ALJ made no such finding (TR. 453).

Despite the errors of the ALJ at step four and at step five which eliminate Plaintiff's PRW as a secretary and the step five jobs of civil service clerk and sorter, there remains the lone job of addresser which exists in significant numbers in the regional and national economies (TR. 453, 643). Thus, it appears that the Commissioner met his burden at step five; and that his conclusion as to the job of addresser is supported by substantial evidence.

# II.

Plaintiff next argues that the ALJ erred by failing to properly evaluate the medical opinions of Plaintiff's treating physician, Mark Winchester, M.D.,(See Plaintiff's Brief at pages 9-14). In a Medical Source Statement—Physical dated August 17, 2005, Dr. Winchester found that Plaintiff could occasionally lift and/or carry less than 10 pounds; that she could walk only one hour and/or stand only one hour in an eight hour workday; and that she could sit for four hours in an eight hour workday, but could only sit continuously for one hour (TR. 366). Dr. Winchester further concluded that Plaintiff could never climb, balance, stoop, kneel, crouch, crawl or handle; and that she could only occasionally reach (TR. 367). Dr. Winchester also stated that Plaintiff "requires high dose narcotic pain medication daily"; and that "she has chronic debilitating pain in spite of all treatment" (TR. 367). Dr. Winchester's opinions purported to cover the period from 2001 to August 2005 (TR. 367).

When presented with opinions of a treating physician, the ALJ must "give good reasons in her decision for the weight assigned to the opinion. 20 C.F.R. § 404.1527(d)(2) *see also* SSR 96-2p; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). The decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for "controlling weight." An ALJ should keep in mind that "it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p; *see also* 20 C.F.R.§404.1527(d)(2).

The Tenth Circuit described the required analysis of a treating physician's opinion in *Watkins v. Barnhart*, 350 F. 3d 1297, 1300-1301, (10th Cir. 2003):

> The analysis is sequential. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.* The agency ruling contemplates that the ALJ will make a finding as to whether a treating source opinion is entitled to controlling weight.

The Court in *Watkins* further reasoned that

> Resolving the controlling weight issue does not end our review. In completing the analysis: adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927

*Watkins* at 1300; SSR 96-2p.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight then in order to disregard disregard or give "slight weight" to that treating physician's opinion, she must set forth "specific, legitimate reasons" for doing so. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of

> examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

In her decision the ALJ provided a thorough review of the medical evidence (TR. 39-46). However, the ALJ failed to adequately explain why she assigned "little weight" to the opinions of Dr. Winchester (TR. 452). The ALJ offered only that

> Since her alleged onset date, over seven years ago, the claimant has sought the treatment of Dr. Winchester infrequently and inconsistently. The claimant sought treatment from Dr. Winchester only two times in 2006. Moreover, the progress notes of Dr. Winchester are largely illegible, with few if any references to positive findings upon physical examination or laboratory testing that would support an inability to engage in any sustained work activity. Instead, the pre-printed portion of Dr. Winchester's examination sheet reference extensive negative findings inconsistent with disability. Specifically, on August 19, 2003, he noted that the claimant had benefited from the use of a stimulator, with "excellent results in decreasing pain and muscle spasms, as well as improving overall muscle condition." He concluded that the claimant was "able to effectively control her pain" with the use of this stimulator...

(TR. 452). Although the ALJ determined that the opinions of Dr. Winchester were not entitled to controlling weight, the ALJ failed to complete the required analysis under *Goatcher* and 20 C.F.R. § 404.1527(d)(2)-(6).

The analysis provided by the ALJ is flawed in several respects. First, the ALJ's reliance on Plaintiff's scarcity of treatment under Dr. Winchester in 2006 bares no relationship to Dr. Winchester's August 2005 opinions. Second, the ALJ appears to discount the opinion of Dr. Winchester based on "illegible" treatment notes. When presented with illegible treatment notes the ALJ should have fulfilled her duty to develop the record by recontacting the physician. SSR 96-5p. Also, the ALJ failed to discuss whether the opinions of Dr. Winchester were consistent with other

medical record as a whole. The court cannot simply presume the ALJ applied the correct legal standards in considering the opinions of Dr. Winchester. Thus, remand is appropriate because the court cannot meaningfully review the ALJ's determination absent findings and analysis explaining the weight assigned to the opinions of Plaintiff's treating physician, Dr. Winchester. *Watkins* at 1300-1301.

## III.

Plaintiff also argues on appeal that the ALJ erred in his assessment of Plaintiff's credibility (See Plaintiff's Brief at pages 14-15). The legal standards for evaluating pain and credibility are outlined in 20 C.F.R. §§ 404.1529(c), 416.929 and SSR 96-7p, and were addressed by the Tenth Circuit Court of Appeals in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). First, the asserted pain-producing impairment must be supported by objective medical evidence. *Id.* At 163. Second, assuming all the allegations of pain as true, a claimant must establish a nexus between the impairment and the alleged pain. "The impairment or abnormality must be one which `could reasonably be expected to produce' the alleged pain." *Id.* Third, the decision maker, considering all of the medical data presented and any objective or subjective indications of the pain, must assess the claimant's credibility.

> [I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.

*Id.* at 164. In assessing the credibility of a claimant's complaints of pain, the following factors may be considered.

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991). *See also Luna*, 834 F.2d at 165 ("The Secretary has also noted several factors for consideration including the claimant's daily activities, and the dosage, effectiveness, and side effects of medication.").

In *Kepler v. Chater*, 68 F.3d 387, (10th Cir. 1995), the Tenth Circuit determined that an ALJ must discuss a Plaintiff's complaints of pain, in accordance with *Luna*, and provide the reasoning which supports the decision as opposed to mere conclusions. *Id.* at 390-91.

> Though the ALJ listed some of these [Luna] factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.

*Id.* at 391. *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied. *Id* at 1372.

In this case, the ALJ did offer some discussion of Plaintiff's credibility (TR. 449). However, the ALJ ignores the analysis required by *Kepler* and neglects to discuss Plaintiff's attempts to obtain relief, the frequency of medical contacts, or the consistency or compatibility of nonmedical testimony with objective medical evidence. The ALJ's analysis of Plaintiff's credibility amounts to little more than a restatement of the medical evidence where a more meaningful discussion is required. The ALJ's credibility analysis is insufficient according to *Kepler*. On remand, the Secretary should analyze Plaintiff's credibility in accordance with *Luna* and *Kepler*, making express findings and citing specific evidence in the record which relates to Plaintiff's credibility, and linking that evidence to her credibility findings.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the final decision of the Commissioner is not supported by substantial

evidence and should be **REVERSED and REMANDED for further administrative proceedings**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **May 31, 2011**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this the 10th day of May 2011.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE